UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

№ 03-CV-3243 (JFB) (ARL)
№ 03-CV-3466 (JFB) (ARL)
_____

STATE OF NEW YORK, NEW YORK STATE RACING AND WAGERING BOARD, NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION, AND TOWN OF SOUTHAMPTON,

Plaintiffs,

VERSUS

THE SHINNECOCK INDIAN NATION, FREDERICK C. BESS, LANCE A. GUMBS, RANDALL KING, AND KAREN HUNTER,

Defendants.
_____

TOWN OF SOUTHAMPTON,

Plaintiff,

VERSUS

THE SHINNECOCK TRIBE A/K/A THE SHINNECOCK INDIAN NATION, FREDERICK C. BESS, LANCE A. GUMBS, AND RANDALL KING,

Defendants.
_____

MEMORANDUM AND ORDER
February 7, 2008
_____

JOSEPH F. BIANCO, District Judge:

In the above-captioned consolidated actions, plaintiffs New York State, the New York State Racing and Wagering Board, the New York State Department of Environmental Conservation (collectively, the "State"), and the Town of Southampton (the "Town") (collectively, "plaintiffs") sought to permanently enjoin defendants, the Shinnecock Indian Nation (the "Nation" or the "Shinnecock"), and its tribal officials sued in their official capacity (collectively, "defendants"), from constructing a casino and

conducting certain gaming on a parcel of non-reservation property known as "Westwoods," which is situated in the western half of the Town in Suffolk County, New York ("Westwoods" or the "Westwoods land").

After conducting a bench trial, the Court held, by Memorandum and Order dated October 30, 2007 (the "October 30 Order") that plaintiffs met their burden for declaratory and injunctive relief that prevents the development of a casino at Westwoods that is not in full compliance with New York and Town laws and regulations. *See New York v. Shinnecock Indian Nation*, Nos. 03-CV-3243, 03-CV-3466, 2007 U.S. Dist. LEXIS 80443, at *4 (E.D.N.Y. Oct. 30, 2007). The Court further ordered that plaintiffs submit a proposed judgment and permanent injunction and that defendants submit any objections thereto. *Id.* at *354. After receiving these submissions, the Court ordered the parties to confer regarding defendants' objections to plaintiffs' proposed permanent injunction, and ordered plaintiffs to submit a letter to the Court regarding any objections remaining after these further negotiations. *See* Order dated November 16, 2007. By letters to the Court dated December 20, 2007 and December 21, 2007, respectively, plaintiffs and defendants described the remaining areas of dispute regarding plaintiffs' proposed language for the permanent injunction. In particular, the central dispute related to whether the injunction should be limited to the construction and operation of a casino or gaming on Westwoods, as defendants contend, or should permanently enjoin any activity on the Westwoods land that violates Town zoning laws, as the Town suggests. The Court heard oral argument on this issue on January 29, 2008.[1]

For the reasons set forth below, and as reflected in the Judgment and Permanent Injunction attached to this Memorandum and Order, the Court agrees with defendants that the permanent injunction should be limited to the construction and operation of a casino or gaming on Westwoods. Adoption of plaintiffs' proposed broad language would require the Nation to obtain prior approval from the Town zoning board for any activity on Westwoods, even if the Nation wanted to have a Tribal ceremony or cut down a tree for timber – activities the Nation contends it has conducted on Westwoods for hundreds of years and with respect to which plaintiffs have never enforced Town zoning laws – or potentially risk violation of the injunction. Moreover, if the Nation failed to obtain prior approval from the zoning board for any land use, the plaintiffs' broad injunctive language would permit the Town to bypass the ordinary local procedures for enforcement of zoning laws and, instead, use the injunction as a vehicle to enforce their zoning laws in federal court and have a federal court adjudicate whether each such potential violation warranted a contempt order. Although the Town stated at oral argument that it has no intention of invoking the Court's jurisdiction in such situations, the Court declines to adopt broad injunctive language that could federalize every zoning issue relating to the Westwoods land and transform the Court into

---

[1] The Court also heard oral argument on a motion defendants submitted on December 14, 2007 for reconsideration or modification of the October 30 Order by relieving defendants from Stipulation No. 9. The Court will not address that motion herein as the motion is irrelevant to the terms and scope of the permanent injunction, which is the issue addressed in this Memorandum and Order.

2

a super-zoning board cloaked with the power to punish violators with civil contempt orders. In short, this Court will not allow the resolution of this litigation regarding whether gaming can be conducted at Westwoods to convert the federal court, through a broad permanent injunction, into a *de facto* zoning board that potentially could be required to review every future land dispute on Westwoods between the Nation and the Town. That is not the proper role of a federal court. As outlined below, such a result would be inconsistent with Second Circuit cases outlining the proper parameters of a permanent injunction under Rule 65 of the Federal Rules of Civil Procedure and, moreover, is unwarranted given the scope of the trial and the Court's decision in this particular case.

I. STANDARD OF REVIEW

"'The contours of an injunction are shaped by the sound discretion of the trial judge and, barring an abuse of that discretion, . . . will not be altered on appeal.'" *United States v. Carson*, 52 F.3d 1173, 1184 (2d Cir. 1995) (quoting *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1542 (2d Cir. 1992)); *see also Siskind v. Sperry Ret. Program*, 47 F.3d 498, 503 (2d Cir. 1995) (noting that "structure of injunctive relief lies within the sound discretion of the trial judge"); *Metro. Council, Inc. v. Safir*, 99 F. Supp. 2d 438, 442 (S.D.N.Y. 2000) ("The issuance and scope of any injunction is committed to the Court's sound discretion. . . .")

II. DISCUSSION

A. The Scope of Injunctive Relief Under Rule 65

Rule 65 of the Federal Rules of Civil Procedure sets forth the "Contents and Scope of Every Injunction and Restraining Order." Specifically, the Rule states that "every order granting an injunction . . . must . . . state the reasons why it issued[;] . . . state its terms specifically; and . . . describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required." Fed. R. Civ. P. 65(d). "'To comply with the specificity and clarity requirements [of Rule 65(d)], an injunction must be specific and definite enough to apprise those within its scope of the conduct that is being proscribed.'" *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 240-41 (2d Cir. 2001) (quoting *N.Y. State Nat'l Org. For Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989)) (internal citation and quotation marks omitted). "This rule against broad, vague injunctions is designed to prevent uncertainty and confusion on the part of those to whom the injunction is directed, and to be sure that the appellate court knows precisely what it is reviewing." *Rosen v. Siegel*, 106 F.3d 28, 32 (2d Cir. 1997) (citation and quotation marks omitted); *see also In re Worldcom, Inc. Sec. Litig*, No. 02 Civ. 3288, 2007 U.S. Dist. LEXIS 76272, at *11 (S.D.N.Y. Oct. 16, 2007) ("Rule 65 is concerned with vagueness insofar as a vague injunction poses 'the threat of a contempt citation for violation of an order so vague that an enjoined party may unwittingly and unintentionally transcend its bounds.'") (quoting *Sanders v. Air Line Pilots Ass'n, Int'l*, 473 F.2d 244, 247 (2d Cir. 1972)).

3

For these reasons, according to the Second Circuit, "'[u]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.'" *S.C. Johnson*, 241 F.3d at 240 (quoting *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 51 (2d Cir. 1996)); *see also Swift and Co. v. United States*, 196 U.S. 375, 396 (1905) ("[W]e . . . are bound by the first principles of justice not to sanction a decree so vague as to put the whole conduct of the defendants' business at the peril of a summons for contempt. We cannot issue a general injunction against all possible breaches of the law."); *Sterling Drug, Inc. v. Bayer AG*, 14 F.3d 733, 748 (2d Cir. 1994) (holding that injunction tracing language of antitrust statute unfairly required plaintiff to "guess – on pain of contempt – at what conduct the [statute] proscribes" and thus imposed "too onerous a burden"); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999) ("As this injunction would do no more than instruct the City to 'obey the law,' we believe that it would not satisfy the specificity requirements of Rule 65(d) and that it would be incapable of enforcement."); *Louis W. Epstein Family P'ship v. Kmart Corp.*, 13 F.3d 762, 771 (3d Cir. 1994) ("Broad, non-specific language that merely enjoins a party to obey the law or comply with an agreement . . . does not give the restrained party fair notice of what conduct will risk contempt."); *Beatty v. United States*, 191 F.2d 317, 321 (8th Cir. 1951) ("Blanket injunctions against general violation of a statute are repugnant to American spirit and should not lightly be either administratively sought or judicially granted."); *In re Worldcom*, 2007 U.S. Dist. LEXIS 76272, at *10 ("[U]nder Rule 65(d), an injunction must be more specific than a simple command that the defendant obey the law.") (citation and quotation marks omitted); *Lyddy v. Civil Bridgeport Bd. of Educ.*, No. 3:06CV1420, 2007 U.S. Dist. LEXIS 66920, at *21 (D. Conn. Sept. 11, 2007) ("As a substantive matter, such relief cannot be granted because under Rule 65(d), an injunction must be more specific than a simple command that the defendants obey the law."); *Mannington Mills, Inc. v. Robert C. Shinn, Jr.*, 877 F. Supp. 921, 925 (D.N.J. 1995) ("Broad-based 'obey the law' injunctive relief is generally prohibited.").

Here, plaintiffs' proposed permanent injunction represents the very kind of broad-based, "obey the law" injunctive relief that courts, including the Second Circuit, have criticized. Specifically, not only does plaintiffs' proposed injunction enjoin the Shinnecock from "engaging in gambling, or constructing or operating a facility in which it is intended that the conduct of bingo or any other game of chance will occur" without first obtaining various government approvals and permits, (*see* Plaintiffs' Proposed Judgment and Permanent Injunction, submitted December 20, 2007, ¶ 1(a)), but the proposed injunction also enjoins, *inter alia*, the following activities:

> b. clearing, excavating, grading, regrading, bulldozing, removing trees, or engaging in any other work in preparation for the future use of Westwoods or any portion thereof, without prior site plan approval or written permission of the Southampton Town Planning Board . . . provided, however, that nothing in this subparagraph "b" shall be construed to require any person otherwise enjoined or restrained hereby to obtain prior site approval or written

permission of the Town Planning Board in order to engage in any activity, use or construction to which the site plan review process does not apply under Southampton Town Code § 330-181(A).

c. the erecting, constructing, enlarging, altering, removing, improving, demolishing, converting or changing the use or nature of the occupancy of any building or structure at Westwoods or causing same to be done without first obtaining a building permit from the Town of Southampton, as required under Southampton Town Code § 123-9(A)(1). . . .

e. utilizing Westwoods, or any portion thereof, for any use other than those uses which are permitted uses for properties classified as R-60 zoning districts under Southampton Town Code § 330-6 and the Table of Use Regulations (Residence Districts) set forth at Southampton Town Code § 330-10, a copy of which is attached hereto and incorporated herein by reference; provided that nothing in this subparagraph (e) shall be deemed to enjoin or restrain any person otherwise enjoined or restrained hereby from seeking appropriate relief from the Town of Southampton as to any proposed use of Westwoods.

(*See* Plaintiffs' Proposed Judgment and Permanent Injunction, submitted December 20, 2007, ¶¶ 1(b), (c), (e).)

Thus, on its face, plaintiffs' proposed injunction renders any zoning violation at Westwoods by the Nation – and not merely the construction of a casino or the conduct of gaming – a violation of the injunction and, consequently, a basis for a civil contempt order. However, as stated *supra*, the sole question before the Court in the instant action was whether the Shinnecock could construct a casino or conduct gaming at Westwoods in violation of state and local law. This limited question determined the scope of the bench trial the Court conducted and its subsequent holding in the October 30 Order. That the Court found as part of its decision that zoning laws were applicable to Westwoods does not justify broadening the injunction to include all violations of these laws. To so expand the scope of injunctive relief beyond construction of a casino or the conduct of gaming on Westwoods would implicate a seemingly limitless set of activities that have never been presented to or ruled on by the Court and, moreover, would be inconsistent with Second Circuit precedent vacating such overbroad injunctions. *See, e.g., Ibeto Petrochemical Indus. Ltd. v. M/T Beffen,* 475 F.3d 56, 65 (2d Cir. 2007) (ordering district court to "modify its injunction with a specificity consonant with [Second Circuit's] determination" that "the injunction in this case cuts much too broadly"); *Metro. Opera Ass'n, Inc. v. Local 11, Hotel Employees and Rest. Employees Int'l Union*, 239 F.3d 172, 178-79 (2d Cir. 2001) (holding, in First Amendment case, that "the vagueness of this injunction serves as sufficient reason to require that we vacate it"); *New York v. Operation Rescue Nat'l*, 273 F.3d 184, 203 (2d Cir. 2001) (vacating injunction in First Amendment case related to so-called

"no-protest buffer zones" where "enlargements [of buffer zones] by the District Court are more extensive than necessary to effectuate the articulated state interests. . . ."); *Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 300 (2d Cir. 1999) (holding, in trademark case, that "[b]ecause the injunction exceeds the jury's findings of infringement upon Converse's rights, it is overly broad and, in that respect, represents an abuse of the discretion of the district court"); *Sterling Drug*, 14 F.3d at 749 (ordering district court in trademark case to modify injunction so that it was not "so broad as to prohibit generally all unlawful activity"); *see also Okaw Drainage Dist. of Champaign and Douglas County v. Nat'l Distillers and Chem. Corp.*, 882 F.2d 1241, 1247-48 (7th Cir. 1989) (affirming district court's denial of overbroad injunctive relief because "injunction so much broader in scope than the injury sought to be prevented would, if granted, exhibit a lack of equity on its face, and this is reason enough for refusing to issue the injunction") (citation omitted).

B. Land Use Injunctions

Further, while the Second Circuit has not addressed the proper scope of injunctions in the particular context of land use cases, other circuit courts routinely limit injunctions in such cases to cover only that use at issue in the litigation, rather than enjoin all land uses that violate the law or, by analogy, that violate an agreement between the parties. *See, e.g., Louis W. Epstein Family P'ship*, 13 F.3d at 771-72 ("remand[ing] case to the district court to strike from its injunction the catch-all provision enjoining all future encroachments" on plaintiff's land that violate agreement between parties because "blanket prohibition against future interference with an agreement that has been interpreted in only one respect does not give [defendant] notice of all other conduct that is potentially unlawful"); *Fritiofson v. Alexander*, 772 F.2d 1225, 1249 (5th Cir. 1985) (vacating portion of injunction that prohibited Army Corps of Engineers from granting permits to dredge for all projects that were merely "similar" to the project at issue, which may have violated environmental laws, because "there are no equitable grounds for a broadly based injunction here"); *see also Merritt Parkway Conservancy v. Mineta*, 424 F. Supp. 2d 396, 426 (D. Conn. 2006) (noting in case relating to construction project in potential violation of environmental laws that "there may well be categories of construction that could and should go forward" because "any injunction the Court may be required to enter should be narrowly and appropriately tailored"); *Fl. Wildlife Fed'n v. U.S. Corps. of Eng'rs*, 404 F. Supp. 2d 1352, 1366 (S.D. Fla. 2005) (holding that "wholesale injunction of all construction on . . . site would be overly broad to accomplish the intended purpose" of permitting defendant to analyze environmental impact of particular project prior to its construction).

Moreover, in *Jakes Ltd., Inc. v. City of Coates*, which is particularly apposite here, the Eighth Circuit rejected as overbroad an injunction imposed by the district court that ordered plaintiff "to comply with wide-ranging zoning ordinances." 356 F.3d 896, 904 (8th Cir. 2004), *cert. denied* 537 U.S. 948 (2002). In *Jakes*, the injunction prohibited plaintiff from "operating a sexually-oriented business at their current location . . . in violation of the relevant ordinances of the City of Coates." *Id.* at 898 (citation and quotation marks omitted). However, because the only "specific sexually-oriented business at issue when th[e] litigation began" was "live nude dancing," *id.* at 904, the Eight Circuit remanded to the district court to modify the

injunction so that only this type of dancing was prohibited. *Id.*

The Court finds these cases to be persuasive authority and, therefore, similarly holds that injunctions prohibiting all violations of law pertaining to land use are overbroad, where only a particular violation formed the basis for the litigation. Here, then, plaintiffs' proposed injunction – which encompasses all violations of zoning law – is overbroad because the basis for the instant litigation was the Shinnecock's initial effort to construct a casino on Westwoods, and the Court's analysis was limited to the propriety of this particular effort. *See Bayside Enters., Inc. v. Carson*, 470 F. Supp. 1140, 1144 (M.D. Fla. 1979) ("[T]he first amendment will Not [sic] allow blanket injunctions directed at materials that have not judicially been found obscene. . . .")[2]

In fact, the Eighth Circuit in *Jakes* was faced with the very same consequences the Court intends to avoid here by rejecting plaintiffs' broad injunction. In *Jakes*, in the course of analyzing two contempt orders the district court issued pursuant to the injunction at issue there, the Eight Circuit explained:

[I]ssuing such a broad decree has now embroiled the district court in the ongoing task of enforcing local zoning ordinances, permitting the City to shift its day-to-day enforcement actions from the state courts to a federal court long after the initial First Amendment issues were resolved. We conclude that the district court should now withdraw from this discretionary assumption of continuing supplemental jurisdiction.

*Id.* Like the Eighth Circuit, this Court is concerned that such a broad-based injunction would ultimately embroil the Court in the enforcement of local zoning laws, which is more properly the function of a zoning board or state court. Indeed, plaintiffs have failed to provide to the Court a single reason why the Town would require the Court's intervention – as opposed to undertaking normal enforcement procedures in state court – if the Shinnecock were to engage in a non-gaming use of Westwoods that the Town believed was a violation of zoning law.[3] Without any such justification, the Court is loathe to, in essence, federalize these procedures. *See Arkansas Riverview Dev. v. City of Little Rock*, No. 4:06CV00817, 2006 U.S. Dist. LEXIS 52494, at *13 (E.D. Ark. July 18, 2006) ("'A federal court, after all, 'should not . . . sit as a zoning board of appeals.'") (quoting *Vill. of Belle Terre v. Boraas*, 416 U.S. 1, 12 (1974)

---

[2] The Court is unpersuaded that plaintiffs' invocation of a "Table of Use Regulations" in the proposed injunction meaningfully narrows it to conform with the Second Circuit's construction of Rule 65. For example, despite the existence of this table, the Shinnecock may be able to assert that the Town is estopped from enforcing the zoning laws as to certain activities on Westwoods mentioned *supra* – such as cutting timber or various ceremonial uses of the land – because the Town has consistently asserted that these activities do not violate zoning law.

[3] The Court notes, moreover, that to the extent the Nation attempts to assert aboriginal title as a defense in any such enforcement action, principles of *res judicata* and collateral estoppel would bar relitigation of this issue in light of the Court's holding in the October 30 Order.

(Marshall, J., dissenting)); *see also John E. Long, Inc. v. Borough of Ringwood*, 61 F. Supp. 2d 273, 285 (D.N.J. 1998) (MTB)(SRC), *aff'd* 213 F.3d 628 (3d Cir. 2000) ("Routine land use decisions should not be "federalized." In land use cases, federal courts should be reluctant to substitute their judgment for that of the local decision makers. . . .") (citation omitted). *Bus. Ass'n of Univ. City v. Landrieu*, 660 F.2d 867, 877 (3d Cir. 1981) ("If Congress had intended to mandate such a strict procedural hurdle that would, in effect, federalize zoning law, they would have done so in more precise terms. . . .").

### III. CONCLUSION

For the reasons set forth above, the Court has limited the scope of the judgment and permanent injunction in the instant case to reflect the Court's holding in the October 30 Order, and thus only enjoins the Shinnecock from constructing a casino or engaging in gaming on Westwoods in violation of state and local law.[4]

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: February 7, 2008
Central Islip, NY

\* \* \*

The attorney for plaintiffs State of New York, New York State Racing and Wagering Board, and New York State Department of Energy Conservation is Robert A. Siegfried, New York State Office of the Attorney General, Albany, New York, 12224. The attorney for plaintiff Town of Southampton is Michael Stewart Cohen of Nixon Peabody, LLP, 50 Jericho Quad, Suite 300, Jericho, New York, 11753. The attorney for defendants is Christopher H. Lunding of

---

[4] Another issue regarding the injunction's scope related to whether it should enjoin individual defendants in both their individual and official capacities. As reflected in the Judgment and Permanent Injunction issued in connection with this Memorandum and Order, the Court has limited the scope of the injunction to reach individual defendants in their official capacities only. As a threshold matter, because no monetary relief was being sought in this action, it is unclear why relief against defendants in their individual capacity is necessary. Moreover, plaintiffs have failed to provide evidence that the individual defendants engaged in any conduct in their individual capacities that gave rise to the instant action. Indeed, over the years during which this litigation has taken place, plaintiffs repeatedly agreed to substitute new individual defendants as new trustees took office. Because the Judgment and Permanent Injunction not only reaches the individual defendants in their official capacities, but also – *inter alia* – their trustees, officers, agents, servants, employees, representatives, and attorneys, including but not limited to the Shinnecock Nation Gaming Authority, and its trustees, officers, agents, servants, employees, representatives, and attorneys, the Injunction need not also enjoin the individual defendants in their individual capacities to achieve the Injunction's purpose. Given this language in the Injunction and the Nation's ownership of the Westwoods land, the Court is not concerned that the Injunction could be evaded by trustees claiming to be taking actions in their individual capacity. *See generally Ziemba v. Armstrong*, 3:02-cv-2216, 2004 U.S. Dist. LEXIS 14814, at \*4-\*5 (declining to apply injunction to parties in their individual capacity) (citing *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991)).

Cleary, Gottlieb, Steen & Hamilton, One Liberty Plaza, New York, New York, 10006.